**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kriestan Lainie Gaitan,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-23-01678-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Kriestan L. Gaitan's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act (the "Act"). Plaintiff filed a Complaint (Doc. 1) and an Opening Brief (Doc. 12) seeking judicial review of that denial. Defendant SSA filed an Answering Brief (Doc. 16), to which Plaintiff replied (Doc. 17). The Court having reviewed the parties' briefs, the Administrative Record (Docs. 7 & 8), and the Administrative Law Judge's ("ALJ") decision (Doc. 7-10 at 56–69) will affirm the ALJ's decision for the reasons addressed herein.

**I.    BACKGROUND**

Plaintiff filed an Application for SSDI benefits on May 27, 2015, alleging a disability beginning on August 5, 2015, as amended. (Doc. 7-10 at 57–69, 82–83, 102–04.) Plaintiff was last insured on September 30, 2018. (*Id.* at 59.) Plaintiff's claim was initially denied in January 2018, but the District Court remanded the case in November 2019 for further proceedings. (Doc. 7-3 at 19; Doc. 8 at 16.) On remand, in July 2021, a new ALJ

issued a denial, which the Social Security Administration's Appeals Council remanded back to the ALJ. (Doc. 8 at 61, 79.) After another hearing, on October 21, 2022, the ALJ issued a third denial, which the Council denied a request for review on June 23, 2023—making it the final decision of the SSA Commissioner (the "Commissioner"). (Doc. 7-10 at 2, 54.) This appeal followed. (Doc. 1.)

Plaintiff alleges disability due to severe physical impairments of degenerative disc disease, fibromyalgia, and obesity. (Doc. 7-10 at 60.) After considering the medical evidence and opinions, the ALJ determined that Plaintiff, accounting for "some difficulty performing more that light exertional work due to" her alleged severe physical impairments, retained the functional residual capacity to perform light work with postural and environmental limitations. (Doc. 7-10 at 67.)

Plaintiff argues that (1) the ALJ erroneously rejected the assessments of Plaintiff's treating primary care physician, Dr. Steven Sumpter, considering the evidence in the record as a whole; and (2) the ALJ erroneously rejected Plaintiff's symptom testimony without sufficient justification. (Doc. 12 at 1.) The Commissioner argues that the ALJ's decision is free of harmful error because (1) the ALJ reasonably assessed the medical evidence; and (2) substantial evidence supports the ALJ rejecting Plaintiff's subjective complaints. (Doc. 16 at 4, 15.)

## II.  LEGAL STANDARDS

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). In determining whether to reverse an ALJ's decision, the district court

reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

**III.   DISCUSSION**

    **A. Dr. Sumpter's Medical Evidence**

Plaintiff argues the ALJ erred in giving Dr. Sumpter's opinion "little weight" because he "failed to provide specific and legitimate reasons supported by substantial evidence when th[e] record is viewed as a whole." (Doc. 12 at 16–21.) Conversely, the Commissioner argues the ALJ articulated sufficient reasons with citations to the record to reject Dr. Sumpter's findings. (Doc. 16 at 18.)

The Ninth Circuit distinguishes between three types of physicians: (1) treating physicians; (2) examining physicians; and (3) nonexamining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (noting the first are those that treat the plaintiff, the second examine but do not treat, and the third neither examine nor treat). Generally, more weight is afforded hierarchically beginning with treating physicians. *Id.* "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "An ALJ can satisfy the "substantial evidence" requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). The ALJ must set his own interpretations and explain why his are correct, rather than the doctor's—stating conclusions is insufficient. *Id.* at 1012–13 ("[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it." (cleaned up)).[1]

In evaluating Dr. Sumpter's reports, the ALJ reviewed five of his assessments.

---

[1] The applicable regulations have since been amended, but for claims filed before March 27, 2017, the current regulation, 20 C.F.R. § 404.1527, applies. Revisions to Rules Regarding Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017). The Commissioner does not dispute the applicability of 20 C.F.R. § 404.1527. (Doc. 16 at 15 n.5.) Accordingly, all references relate to the prior amendments.

(Doc. 7-10 at 66.) First, Dr. Sumpter opined in August 2015 that: claimant's impairments precluded an eight-hour workday because her physical ailments required her to alternate positions, i.e., sitting and standing, every half or full hour with frequent breaks; and her pain, fatigue, and dizziness were severe requiring at least six absences a month. (*Id.*) Second, in September 2017, Dr. Sumpter opined the same and added that Plaintiff's medications "cause[d] moderately severe somnolence." (*Id.*) Third, in April 2021, he opined the same as the second opinion. (*Id.*) Fourth, in December 2021, he reiterated that Plaintiff could not sit or stand for extended periods of time causing a needed to alternate positions frequently. (*Id.*) Finally, in July 2022, Dr. Sumpter opined that he could not determine whether the restrictions excited at the onset date, as amended. (*Id.*) The ALJ concluded the opinions were inconsistent with the evidence in the record, specifically citing to the records of examinations that showed "generally normal findings." (*Id.*) The ALJ further explained "while claimant has reported continuous pain symptoms, she also reported that her symptoms were relieved by rest, changing positions[,] and opioids," citing to the record. (*Id.*)

Plaintiff argues the specific records the ALJ cites do not support his conclusion that Dr. Sumpter's findings are inconsistent with the record. (Doc. 12 at 16–20; Doc. 17 at 4–6.) The Commissioner argues, in relying on 20 C.F.R. § 404.1527(c)(4), that the ALJ's findings are further supported by the record, pointing to additional evidence in the record, and the records relied upon contradict Dr. Sumpter's conclusion as to Plaintiff's physical limitations. (Doc. 16 at 16–19.) In reply, Plaintiff argues the Commissioner mistakenly bolsters the ALJ's justifications for its findings by pointing to record evidence the ALJ did not cite. (Doc. 17 at 4–6.)

Plaintiff is correct, in part. The Court is constrained to reviewing the ALJ's assertions and will not affirm the decision based on evidence the ALJ did not discuss. *See Lannon v. Comm'r of Soc. Sec. Admin.*, 234 F. Supp. 3d 951, at *958 (D. Ariz. 2017) (collecting cases). The first record the ALJ cites does reveal generally normal findings of not disability, but it predates the allege disability onset date by two years. (*See* Doc. 7-8

at 10.) The second record does not show Plaintiff's disability prevents her from working. (*See id.* at 158.) But it does show Plaintiff experiences pain symptoms consistent with her fibromyalgia. (*Id.*) The third and fourth records also support Plaintiff's alleged pain symptoms but do not detail any significant limitations. (*Id.* at 334; Doc. 7-9 at 121–24.) The fifth record does note Plaintiff's pain and limited motion but otherwise normal findings. (Doc. 8-5 at 62.) Additionally, the cited records also show Plaintiff did indicate that her symptoms are "relieved by rest" and "changing positions." (Doc. 7-8 at 323, 333; Doc. 7-9 at 4; Doc. 8-5 at 67.)

The Ninth Circuit has recognized fibromyalgia symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue . . . . [T]hose suffering from it have muscle strength, sensory functions, and reflexes [that] are normal." *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017) (cleaned up). The cited records vary in detailing these symptoms as supporting pain, tender points, and fatigue at various points, while others do not. This is consistent with fibromyalgia symptom reporting. *See id.* at 663 (noting fibromyalgia symptoms "wax and wane"). In context, however, the ALJ addresses the record by acknowledging "her fibromyalgia is consistent with a severe impairment," but that her "symptoms are responsive to treatment" and the conservative and routine nature of that treatment does not indicate disabling symptoms. (Doc. 7-10 at 65.)

Plaintiff ignores this nuance in the ALJ's findings. In fact, the ALJ rejected a state agency consultant's finding that Plaintiff could complete "medium work" because evidence supported greater exertional limitations. (*Id.*) Evidently, the issue is the inconsistency in the degree of Plaintiff's symptoms disabling her. The ALJ cited record evidence of a normal gait, lack of tender points, full range of motion in her joints, no fatigue, normal strength, and that treatment relieved her symptoms. (Doc. 7-10 at 65–67; Doc. 7-8 at 291, 305, 316, 324, 254; Doc. 7-9 11, 16, 30.) It is these generally normal findings that the ALJ weighed to discount Dr. Sumpter's opinion as to the severity of the symptoms to conclude she can complete light work. *Cf. Revels*, 874 F.3d at 664 (finding

an ALJ erred in giving an treating doctor's opinion "no weight" when the record was consistent with the doctor's opinion that the plaintiff could complete light work in accounting for her fibromyalgia symptoms). Therefore, the Court finds the ALJ stated specific and legitimate reasons for discrediting Dr. Sumpter's opinion and did not err.

### B. Plaintiff's Symptom Testimony

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). "[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For example, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040).

Plaintiff argues the ALJ committed materially harmful error by failing to provide specific, clear, and convincing reasons in rejecting her symptom testimony. (Doc. 12 at 21.) Specifically, Plaintiff takes issue with the ALJ's rationale for concluding her symptoms were not debilitating to the extent she claimed. (Doc. 12 at 22.) Plaintiff also

contends that the ALJ failed to understand the impact of her fibromyalgia, and instead the ALJ focused on her degenerative spinal conditions. (*Id.* at 23.) Plaintiff further argues the ALJ's characterization of Plaintiff's symptoms as responsive to "conservative" treatments unsupported and that her symptoms persisted, despite treatment. (*Id.* at 24–25.) In turn, the Commissioner argues that the ALJ appropriately discounted Plaintiff's testimony because the record evidence discussed shows she could perform light work and was not precluded from working all together. (Doc. 16 at 7–9.)

At the outset, the Court is cognizant that fibromyalgia is diagnosed "entirely on the basis of patients' reports of pain and other symptoms." *Revels*, 874 F.3d at 663. As noted above, however, many of the records show a normal gait, lack of tender points, full range of motion in her joints, no fatigue, normal strength, and that treatment relieved her symptoms. (Doc. 7-10 at 65–67; Doc. 7-8 at 291, 305, 316, 324, 254; Doc. 7-9 11, 16, 30.) The ALJ also discussed evidence that Plaintiff's degenerative disc disease was minor, not severe, and highlighted an opinion of a medical consultant that concluded Plaintiff could perform light work with some exertional limitations. (*Id.* at 63–66.) The ALJ went on to describe evidence of Plaintiff's ailments as limiting her ability to work normally but found she could complete light work. (*Id.*) Further, the ALJ found that to the extent the impairments were severe, her "conservative" treatments showed a "significant improvement" on her lumbar pain—reported as an 80% improvement in her pain. (*Id.* at 64; Doc. 7-9 at 6; Doc. 8-5 at 70.) Regardless of a "conservative" characterization of the injections treating her fibromyalgia, the ALJ's nomenclature is problematic but his reasoning as to the effectiveness of the treatments holds true and supports his conclusions. *See, e.g.*, *Revels*, 874 F.3d at 667 (taking issue with the ALJ's characterization of a fibromyalgia treatment as "conservative").

The ALJ also noted Plaintiff's statements about her ability to perform various daily activities appeared to reduce the severity of the disability for which she claimed. (Doc. 7-10 at 65.) The ALJ reasoned that based on all of this evidence, Plaintiff's self-reporting that she was entirely precluded from working unsupported but that her impairments did

1   reduce her ability complete more than light work. (*Id.* at 67.); *see also Revels*, 874 F.3d at
2   667 (noting inconsistent daily activities, in addition to other evidence, may provide
3   justification for rejecting symptom testimony). Thus, the ALJ provided sufficient, clear,
4   and convincing evidence to discount Plaintiff's testimony.

5   Therefore, the Court finds the ALJ did not commit materially harmful error by
6   rejecting Plaintiff's symptom testimony.

## IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** affirming the October 21, 2022 decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 18th day of September, 2024.

Honorable Susan M. Brnovich
United States District Judge